**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**BILLY RAY BARNES**                                    **PLAINTIFF**

**VS.**                                **CIVIL ACTION NO. 2:10cv281-MTP**

**SHERIFF BILLY MCGEE**                                 **DEFENDANT**

<u>**OPINION AND ORDER**</u>

THIS MATTER is before the court on the Motion for Summary Judgment [40] filed by

Defendant Billy McGee.  Having reviewed the submissions of the parties and the applicable law,

the court finds that the Defendant's Motion for Summary Judgment [40] should be granted.

FACTUAL BACKGROUND

Plaintiff Billy Ray Barnes, proceeding *pro se* and *in forma pauperis*, filed his Complaint

[1] pursuant to 42 U.S.C. § 1983 on November 30, 2010.  Through his complaint, and as

clarified during his *Spears*[1] hearing, Plaintiff alleges claims against Defendant for the denial

and/or delay of adequate medical treatment in violation of the Fourteenth Amendment.[2]  *See*

Omnibus Order [32].  The allegations in Plaintiff's complaint occurred while he was a pre-trial

---

[1]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).  Plaintiff's *Spears* hearing took place on November 17, 2011.  *See* Omnibus Transcript, Ex. 43 to Motion [40-43].

[2]"The constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment."  *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996); *see also Brown v. Attala County Sheriff's Dep't*, No. 1:08CV96-A-A, 2009 WL 1750333, at *3 (N.D. Miss. Jun. 19, 2009) (citing *Hare*, 74 F.3d at 648 (holding that the subjective deliberate indifference standard applies to both pre-trial detainees under the Fourteenth Amendment and convicted inmates under the Eighth Amendment).

1

detainee at the Forrest County Jail (the "Jail").[3]  Plaintiff is currently incarcerated at the South

Mississippi Correctional Institution.  Plaintiff seeks compensatory and punitive damages for pain

and suffering and wants to be returned to cell block 42.[4]

STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most

favorable to the Plaintiff, the Defendant demonstrates that there is no genuine issue of material

fact and that he is entitled to judgment as a matter of law.  *Woods v. Smith,* 60 F.3d 1161, 1164

(5th Cir. 1995).  If the Defendant fails to discharge the burden of showing the absence of a

genuine issue concerning any material fact, summary judgment must be denied.  *John v.

Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985).  The existence of an issue of material fact is a

question of law that this court must decide, and in making that decision, it must "draw inferences

most favorable to the party opposing the motion, and take care that no party will be improperly

deprived of a trial of disputed factual issues."  *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy

regarding material facts.  "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871,

902 (1990), the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A.*, *Inc.*, 14 F.3d

1082, 1086 (5th Cir. 1994), or unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97

---

[3]Plaintiff testified at his omnibus hearing that he was awaiting trial for a sexual battery charge when his claims occurred.  *See* Ex. 43 to Motion [40-43] at 7-8.  However, Defendant claims that was Plaintiff was also on probation for a felony conviction at the time of his arrest for the sexual battery charge in Forrest County.  *See* Memo. [41] at 6-7; Exs. 1 [40-1], 7 [40-7].  For purposes of this motion, the court will analyze Plaintiff's claims as a pretrial detainee.

[4]Plaintiff originally wanted an order requiring that the recommended surgery be performed.  However, at the omnibus hearing he testified that he had the recommended surgery in June 2011.

2

(5th Cir. 1994), are not enough to create a real controversy regarding material facts.  In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983.  However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers."  *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981).  Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents."  *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted).  The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation.  *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978).

Plaintiff alleges a claim against Sheriff Billy McGee for the denial and/or delay of adequate medical care in violation of the Fourteenth Amendment.  Specifically, he claims he was

denied and/or delayed adequate medical treatment for hidradenitis,[5] which he claims is a chronic condition.  He claims he had a "flare-up" in June 2010, approximately one month after his arrival at the Jail.[6]  He saw Dr. Washington who treated him with antibiotics.  Plaintiff subsequently saw Dr. Washington and several other doctors, including specialists, who all recommended surgery after antibiotics were unsuccessful.  After several months, Plaintiff's condition continued to spread and worsen.  He claims he submitted a grievance to Sheriff McGee and received no response.

Plaintiff underwent surgery at Forrest General Hospital in December 2010, but he claims it was not the surgery he needed; it was only to control the infection.  His surgeon at Forrest General referred him to another specialist, and he claims another surgery was scheduled for January 10, 2011.  He claims the surgery never took place, and he was moved to Rankin County after he entered a plea.

Plaintiff ultimately had the surgery he claims he needed in June 2011.  He claims the delay in treatment caused his condition to worsen, caused him to lose substantial weight, and caused him to get a staph infection.  He claims he is still undergoing treatment for the condition. He further claims that Sheriff McGee knew of his condition.  He filed three grievances about his condition and submitted them to Sheriff McGee, who allegedly failed to ensure that Plaintiff be seen by a specialist and receive the medical care he needed.

"Prison officials violate the constitutional proscription against cruel and unusual

---

[5]Hidradenitis is defined as "inflammation of a sweat gland, usually of the apocrine type." *Dorland's Illustrated Medical Dictionary* 822 (29th ed. 2000).

[6]The record reflects that Plaintiff was booked into the Jail on May 6, 2010.  Ex. 14 to Motion [40-14].

punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 F. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The subjective deliberate indifference standard applies to both pre-trial detainees under the Fourteenth Amendment and convicted inmates under the Eighth Amendment. *Brown v. Attala County Sheriff's Dep't*, No. 1:08CV96-A-A, 2009 WL 1750333, at *3 (N.D. Miss. Jun. 19, 2009) (citing *Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir.1996)).

A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838. Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 F. App'x at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional

5

violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). The Plaintiff is not entitled to the

"best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby*

*v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006).

Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth

Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.

2001).

The record reflects that Plaintiff submitted requests for medical care for boils and/or

cysts on his body (hidradenitis) on the following dates: May 12, 2010, June 9, 2010, June 12,

2010, June 29, 2010, July 14, 2010, July 15, 2010, July 17, 2010 and July 26, 2010. *See* Exs. 15-

22 to Motion [40]. On each occasion, Plaintiff was seen within a few days of his request and

was provided treatment in the form of antibiotics, pain medication, and/or was given wound

dressings as requested. *Id.* Dr. Calvin Washington's notes from Plaintiff's June 15, 2010, visit

note that Plaintiff has a fifteen-year history of hidradenitis suppurativa. *See* Ex. 17 to Motion

[40-17] at 2.

Plaintiff's July 15 and 17, 2010, requests to the medical staff demand that he be provided

surgery for his condition. Plaintiff saw Dr. Washington on July 17, 2010, and he was referred to

Dr. Wall for a surgery consult at Hattiesburg Clinic. *See* Exs. 20-21 to Motion [40]. An

appointment was scheduled with Dr. Wall for July 27, 2010. *See* Ex. 21 [40-21]. The

appointment was cancelled by Dr. Wall because he informed Dr. Washington that "not too much

more could be done for Mr. Barnes." *See* Ex. 22-23, and 13 to Motion [40]. On August 3, 2010,

Dr. Washington referred Plaintiff to Dr. Azar at Wesley Group. *See* Ex. 23 [40-23].

Plaintiff saw Dr. Azar on August 10, 2010, who recommended Plaintiff continue

antibiotics and follow-up in one week to discuss possible surgery. Ex. 24 to Motion [40-24].

Plaintiff saw Dr. Azar on August 17, 2010, who recommended he be referred to UMC (University Medical Center). *Id.*

Plaintiff submitted additional medical requests in August and September 2010, and was prescribed pain medication. Dr. Washington's notes from August 31, 2010, reflect that he planned to call Dr. Azar's office to see if a surgery date had been scheduled and that if it had not, he would seek another consultation. *See* Exs. 26-30 to Motion [40].

Plaintiff saw Dr. William Reno on October 11, 2010, for a surgery consult. Plaintiff was assessed with "severe hidradenitis bilateral axilla, inguinal region, scrotum and buttocks." Ex. 31 to Motion [40-31]. Dr. Reno noted that Plaintiff had two options: to open up the affected areas, drain them, and treat them with antibiotics, or to excise the entire area and later place a skin graft on the area. *Id.* Plaintiff submitted an additional medical request on October 24, 2010, and was provided pain medication and it was noted that he was to follow-up with Dr. Reno. Ex. 33 [40-33].

Plaintiff requested and was provided with dressing supplies for his wounds during the month of November 2010. *See* Ex. 13 to Motion [40-13]. During a visit on November 22, 2010, for another issue, Dr. Washington noted that Plaintiff appeared to be doing "really well at this time regarding the hidradenitis suppurativa." Ex. 34 [40-34]. Likewise, a December 1, 2010, visit for depression noted that the last antibiotic given to Plaintiff, Doxycycline, was helpful to his hidradenitis. He was given another prescription of Doxycycline and was given Celexa for depression. Ex. 35 [40-35].

On December 14, 2010, Plaintiff was sent to Forrest General Hospital for treatment after he reported that he could not use his right arm and could not stand on his right leg due to weakness and numbness. Ex. 36 [40-36]. Plaintiff saw Dr. Jennings at Forrest General, who

referred him to Dr. Wheeler.  Dr. Wheeler performed an incision and drainage of Plaintiff's abscesses.  It was noted that Dr. Reno was consulted and said he would see Plaintiff for more definite treatment once his wounds were healed.  However, Plaintiff was actually referred to a Dr. Trey Thomas for excision of the worst areas.  Plaintiff was discharged on December 21, 2010, and returned to the Jail. Ex. 37 [40-27].  Plaintiff's dressings were changed daily by the medical staff at the Jail, until he requested to do it himself and was provided the supplies to do so.  Ex. 13 [40-13].

Plaintiff was seen on December 29, 2010, at Forrest General for follow-up status post I&D (incision and drainage) of multiple abscess sites.  Plaintiff reported he was doing "fairly well."  Ex. 38 [40-38].  He was advised to follow-up with the Trauma Surgery Clinic on January 11, 2011, for evaluation, and was told to keep his appointment with Dr. Thomas on January 4, 2011.  *Id.*

Plaintiff saw Dr. William Thomas on January 4, 2011, for a surgical consultation.  Dr. Thomas recommended excision with complex closure of the left axillary area, to be followed by the right side once the left side was healed.  Ex. 39 [40-39].

On January 11, 2011, Plaintiff returned to the Trauma Surgery Clinic for his appointment.  Dr. Aseme noted that Plaintiff's wounds were clean and healing well.  Dr. Aseme had planned to refer Plaintiff to a plastic surgeon; however, the prison guard informed her that he was being transferred to Parchman (the Mississippi State Penitentiary) the following week and that all future medical care would be provided there.[7]  Ex. 40 [40-40].

---

[7]Plaintiff pled guilty to sexual battery on January 7, 2011, and was remanded to the custody of Sheriff McGee to await transportation to the MDOC to serve his sentence.  *See* Ex. 9 to Motion [40-9].

The nurse's notes from January 7, 2011, and January 13, 2011 state that Plaintiff reported he was feeling better.  On January 13, 2011, Plaintiff informed the nurse "I feel a whole lot better than how I used to feel."  Ex. 13 [40-13].  Plaintiff was released from the Jail on January 25, 2010, and transferred to the custody of the Mississippi Department of Corrections. Ex. 12 [40-12].

As reflected by the medical history above, Plaintiff was treated extensively for his chronic medical condition, hidradenitis suppurativa, while housed at the Jail.  The fact that Plaintiff disagrees with the treatment he received does not amount to deliberate indifference.  *See Norton*, 122 F.3d at 292.  Moreover, there is no evidence that Sheriff McGee took any action to deny or delay Plaintiff's medical treatment.  Indeed, Plaintiff was seen by several outside specialists.  While it is unfortunate that Plaintiff was unable to get the recommended surgery prior to his transfer to MDOC custody in January 2011, there is no evidence that this was due to the deliberate indifference of Sheriff McGee.  *See Horn v. Vaughan*, 469 F. App'x 360, 363 (5th Cir. 2012) (finding that the Sheriff was not deliberately indifferent to inmate's medical needs where plaintiff spoke with the Sheriff on only one occasion about his medication, there was no evidence that the Sheriff was aware that his administrator was ignoring or neglecting plaintiff's requests for medication, and where Sheriff was in no position to question the clinic's medical treatment of plaintiff).

To be sure, the only involvement by Sheriff McGee in Plaintiff's medical treatment is minimal at best.  Plaintiff testified at his omnibus hearing that Sheriff McGee was aware of his condition through the grievances he filed and that he should have done something to ensure he received the proper treatment.  The record contains one grievance from Plaintiff dated July 19, 2010 regarding his condition.  Ex. 6 [40-6].  According to his affidavit, Sheriff McGee received

9

Plaintiff's grievance and directed it to the Jail's medical staff.  Ex. 44 [40-44].

In addition, Plaintiff's medical chart notes that Sheriff McGee was notified of Dr. Azar's recommendation that he be referred to UMC on September 21, 2010.  Ex. 24 [40-24].  Plaintiff was referred to Dr. Reno on October 11, 2010, for a surgery consult because Dr. Washington could not get a definite surgery date from Dr. Azar.  According to Sheriff McGee's sworn affidavit, at no time did he or any other staff member at the Jail ignore, delay or deny Plaintiff's medical treatment.  Ex. 44 [40-44].

Plaintiff's responses [46][48] simply fail to raise a genuine issue of material fact as to whether Sheriff McGee was deliberately indifferent to his serious medical needs.  Moreover, Plaintiff has failed to establish that Forrest County had a policy, custom or practice that was the "moving force" behind the alleged deliberate indifference.  *See Monell*, 436 U.S. at 694.  Based on the foregoing, Sheriff McGee is entitled to judgment as a matter of law and this action should be dismissed.[8]

CONCLUSION

For the reasons stated above, the court finds that Defendant Billy McGee's Motion for Summary Judgment [40] should be granted.  Accordingly,

IT IS, THEREFORE, ORDERED:

That  Defendant Billy McGee's Motion for Summary Judgment [40] is GRANTED and that this action is dismissed with prejudice.  A separate judgment will be entered.

---

[8]Because the court concludes that there is no genuine issue as to whether Defendant violated Plaintiff's constitutional rights, it declines to address Defendant's arguments regarding qualified immunity.  Likewise, Defendant included an argument in his Memorandum [41] regarding Plaintiff's due process claims.  The court finds that no due process claims were alleged by Plaintiff, and thus, declines to address that argument.  *See* Omnibus Order [32].

SO ORDERED this the 13th day of December, 2012.

s/ Michael T. Parker
United States Magistrate Judge